ROSS *v.* DAMM.

1. REFORMATION OF INSTRUMENTS — DISPUTED TRACT — SIZE AND VALUE—FINDING OF COURT—EVIDENCE.

In suit for reformation of deeds of lake frontage land from common grantor where disputed triangular tract was awarded defendants because of valuable improvements they made thereon, finding of trial court as to number of acres and value of such tract *held,* supported by evidence.

2. SAME—DAMAGES—OIL LEASE VALUE.

Award of $300 per acre as damages by court of equity for oil lease value, as of a given date, of disputed tract of land involved in boundary dispute, which was within evidence presented, *held,* not error notwithstanding plaintiffs made lease of adjoining acreage on such date at $200 per acre where other leases of land similarly situated were selling for much higher price.

3. MINES AND MINERALS—UNLAWFUL EXTRACTION OF OIL AND GAS.

Owner of fee who has not leased land is entitled to oil and gas unlawfully extracted from her premises.

4. SAME—CONVERSION—GIST OF ACTION.

In suit for conversion of oil by drilling so close to boundary of plaintiff's land as to drain oil therefrom, and prevent drilling offset wells, the gist of the action is not an invasion of the land itself but the unlawful appropriation of the oil as personal property.

5. SAME—CONVERSION—MEASURE OF DAMAGES.

In suit for conversion of oil by drilling so close to plaintiff's boundary as to drain oil from land, title to which is awarded to defendants because of valuable improvements they made thereon and damages awarded to plaintiff therefor, measure of damages for oil extracted by defendants' wells nearest thereto is one-eighth of value of such portion of defendants' total production as is represented by proportion of disputed tract to defendants' total tract, where it is shown that production from whole parcel is uniform.

6. SAME—DAMAGES—CONVERSION—BEST EVIDENCE.

Because of the uncertain and speculative nature of damages in a suit for conversion of oil by drainage to wells placed so near

boundary as to deprive adjoining owner of right to drill offset wells, the best evidence of which the subject is capable is required, and that requirement is satisfied by testimony of expert witnesses who are familiar with the field and who base their conclusions upon all known factors affecting the probable loss of production.

7. Same—Oil Flows to Nearest Well.

Under normal conditions oil nearest to drilled well will first flow into it and be pumped out.

Appeal from Muskegon; Vanderwerp (John), J. Submitted October 6, 1936. (Docket No. 20, Calendar No. 39,083.) Decided December 28, 1936.

Bill by Catherine Ross against Carl P. Damm and wife, and Frank J. Walsh and wife, for the reformation of deeds and an accounting. On hearing to determine whether or not improvements were permanent and value of oil rights. From decree for plaintiff, defendants Damm appeal. Affirmed.

*Martin H. Carmody* and *Lou L. Landman,* for plaintiff.

*A. S. Hinds* (*Clarence N. Sessions,* of counsel), for defendants Damm.

Sharpe, J. The issues involved in this cause pertain to a triangular strip of land with an area of 4.166 acres, the point of which borders on Bear lake in Muskegon county. This case was before this court once before and is reported in 271 Mich. 474 to which reference is made for facts unnecessary to be stated herein. The scope of the inquiry in the present cause is indicated by the following quotation from page 483 of the opinion above referred to.

"The record does not show whether Damm has made valuable improvements on the triangular strip

between the lines FE' and EE' which cannot be removed. If so, it may be necessary to award plaintiff the value of this property rather than the land itself. Nor can it be determined whether the Damms realized moneys from oil rights on this particular strip. These questions, and others which may present themselves, must be determined by the trial judge, to whom the case is referred for further hearing, and for entry of such decree as may then be determined, in accordance with this opinion."

This cause came on for trial in December, 1935, and following the taking of testimony the court found that defendants had made valuable improvements on the triangular strip which could not be removed and held that the entire strip rather than a portion thereof should be retained by defendants and awarded plaintiff the sum of $624 as the value of this land; that defendants should pay plaintiff the sum of $1,248 as the lease value of the land for oil together with interest on the same in the sum of $452.40 from September 26, 1928, and the further sum of $2,305.50 for damages occasioned plaintiff by reason of defendants' conversion of oil from plaintiff's land; and that plaintiff was to execute and deliver to defendants a good and sufficient conveyance of the triangular parcel above referred to together with any appurtenances thereto or improvements thereon.

The defendants appeal and contend that the court was in error in awarding to defendants the entire triangle; that the most that should have been awarded was a small triangle located at the south end of the large triangle marked FEE' containing .06 of an acre and at a price of $300 per acre the value of this small triangle of land would be not to exceed $4.33 or at a price of $624 per acre, the highest value placed on this triangle, the proportionate

value would be $9; that if defendants be decreed to be the owner of the entire parcel, then its lease value be reduced from $300 per acre to $200 per acre; that no trespass upon plaintiff's land was committed as there was no drilling done within the tri-. angle FEE'; that because of the nature of oil and gas there is no way in which a determination can be made as to the extent of plaintiff's loss; and that damages awarded would be speculative.

It is undisputed that the line FE' which marks the eastern boundary of defendants' land passes through a permanent, substantial and valuable building which could not be easily moved and constitutes valuable improvements on the triangular strip between the lines FE' and EE'; this strip containing 4.166 acres was awarded to defendants. The greatest value of this land comes from the fact that it extends south as far as Bear lake. The northern portion has been damaged by reason of defendants' gas and oil operations thereon.

The trial court found that the reasonable value of this strip of land was the sum of $624, this amount was arrived at by placing a valuation of $150 per acre upon the land. There was evidence from which the trial court could make this determination. That part of the decree determining the number of acres and its value as found by the trial court is affirmed.

The next question presented for review pertains to the lease value of the land for oil purposes. The trial court determined this amount to be $1,248 as of September 26, 1928. Defendants contend that because plaintiff and her husband were given $200 per acre by the Dixie Oil Company for the adjoining acreage, plaintiff should be limited to that amount as a measure of damages. We are not in accord with this view. There was testimony presented that similarly situated leases in 1928 were selling

for a much higher price per acre. The fact that
Mr. and Mrs. Ross leased one parcel of land for
$200 per acre is no reason why plaintiff should be
compelled to lease another parcel for the same
amount and especially in view of the fact that she
in all probability could have leased this particular
parcel of land for a greater amount had it not been
for the acts of defendants in preventing her from
so doing.

Plaintiff claims damages incident to conversion of
oil by reason of the fact that defendants claimed
ownership of the triangular parcel of land and lo-
cated their wells so close to the boundary of the tri-
angle that they drained substantially all of the oil
therefrom; and that because of the location of de-
fendants' wells, plaintiff was deprived of the op-
portunity of drilling offset wells in the triangle.

S, T, U—Defendants' Oil Wells.
V, W, X—Plaintiff's Oil Wells.
This diagram is not drawn to scale.

By referring to the above drawing we find that
defendants drilled the well S 60 feet west of the line

FE′, plaintiff's westerly boundary line; the well T is 71.08 feet west of the line FE′; and the Well U is 104.64 feet west of the line FE′. If plaintiff had possession of the triangular parcel of land in 1929, a permit would have been issued for the drilling of a well in the triangle 120 feet to the east of defendants' well S as an offset well and the same procedure would have been followed as to the other wells drilled by defendants. That the plaintiff is entitled to the oil and gas unlawfully extracted from her premises is not seriously disputed. In *Attorney General* v. *Railway Co.,* 263 Mich. 431 (94 A. L. R. 520), we said:

"The defendant acquired the right of way in question by purchase. It owns a fee absolute. The oil, gas, and minerals in the soil are a part of the real estate. It owns them. An incident of ownership is the right to sell or lease or use the property in any lawful way."

In 1 Thornton, Law of Oil and Gas (4th Ed.), § 115, the author states:

"If the lessee's premises be invaded, and oil or gas extracted from them by sinking wells or in any other manner, he may recover damages from the wrongdoer."

And in Mills & Willingham, Law of Oil and Gas, pp. 31, 32, the authors in commenting on conversion of oil, state:

"The gist of the action is not an invasion of the land itself, and the consequent damage to the mineral estate, but an unlawful appropriation of the oil and gas when brought to the surface; that is, an invasion of the owner's right in the oil and gas as personal property. The right to recover and the measure of damage is the same, whether the right arises out of the ownership of the land, or of the

mineral estate under a grant or reservation, or of the right to produce under a prior lease."

The record in this cause shows that the production from the whole parcel was uniform; that the total production from the three wells located on defendants' property was the sum of $133,128.29 and that this oil was taken from 30.07 acres which included the 4.166 acres of land above referred to, while the total production of oil from plaintiff's three wells was $128,043.52 which included 33.1 acres, but not the 4.166 acres. The gross value of the production per acre of the defendants' 30.07 acres was $4,427.28, multiplying this amount by 4.166, the number of acres in the triangular piece, gives $18,444.04 as the gross production. One-eighth of that amount is $2,305.50, the amount which plaintiff is entitled to for the one-eighth royalty.

In Mills & Willingham, Law of Oil and Gas, pp. 170, 171, it is said:

"The courts have been very vague and indefinite upon the question of the measure of damages for a breach of the implied covenants, usually accepting the findings of the trial court without a critical examination into the evidence upon which the conclusion was based. In the case of damages for drainage, the general rule seems to be that the lessee is liable for the proportion due the lessor of the oil and gas that shall have been drained from his land by the offset wells.

"In affirming a judgment for damages for failure to develop, the Supreme * Court of Illinois used this

---

* In Mills & Willingham the following quotation is credited to *Daughetee* v. *Ohio Oil Co.*, 263 Ill. 518. The quotation does not appear in the opinion of the supreme court of Illinois but in the opinion of an appellate court on review of an earlier trial of the case and reported in 151 Ill. App. 102, 109.—REPORTER.

language (*Daughetee* v. *Ohio Oil Co.,* 263 Ill. 518, [105 N. E. 308]) :

" 'Upon the question as to the measure of damages, the court, in substance, instructed the jury that in arriving at their verdict, they should subtract from the quantity of oil, which they found should have been produced, * * * the quantity actually produced and saved, and allow to the plaintiff one-eighth of the value of the difference, at the market prices during the period in question. This instruction correctly stated the rule as to the measure of damages.'

"The supreme court of Oklahoma has adopted the rule thus laid down by the Illinois court as the measure of damages for drainage. (*Junction Oil & Gas Co.* v. *Pratt,* 99 Okla. 14 [225 Pac. 717].)

"On account of the uncertain and speculative nature of the damages, great difficulty has been experienced in proving a reasonably accurate basis for computing them. The courts have recognized this difficulty and have met it by requiring only that the proof should be made by the introduction of the best evidence of which the subject is capable. It has, therefore, been held that the proper way to prove the damage is by the testimony of expert witnesses, who are familiar with the field, and who base their conclusions upon all of the known factors affecting the probable loss of production."

In making the above computation of the amount due plaintiff for the conversion of oil from the 4.166 acres, we find that under normal conditions oil nearest to the drilled well will first flow into and be pumped out; that defendants' well S is 180 feet from the line EE', while plaintiff's well V, opposite in an easterly direction from defendants' well S, is 250 feet east of the line EE'; that defendants' well T is 162 feet from the line EE', while plaintiff's well W is 258 feet from the line EE'; that defendants' well U is 166 feet from the line EE', while plaintiff's well X is 300 feet from the line EE'. From these facts we conclude that defendants by drilling their

wells too close to the line FE' deprived plaintiff of the opportunity of claiming and taking the oil that was rightfully hers; and defendants must respond in damages for such conversion.

The decree of the lower court is affirmed. Plaintiff will recover costs.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL and TOY, JJ., concurred. POTTER, J., did not sit.