Juan **CAUDILLO,** Appellant,

v.

**CORPORATION COMMISSION of the State of Oklahoma, and Roy Fath,** Appellees.

No. 48099.

Supreme Court of Oklahoma.

June 22, 1976.

Walker, Lawrence & Walker, Barth P. Walker, Russell James Walker, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Harvey H. Cody, Conservation Atty., Corp. Com'n. of Oklahoma, Ferrill H. Rogers, Oklahoma City, for appellees.

BARNES, Justice:

This appeal involves an Application for an Order establishing a 10-acre drilling and spacing unit for the production of oil and gas from the Second Wilcox Formation underlying the E/2 of SW/4 of NE/4 of SE/4 and W/2 of SE/4 of NE/4 of SE/4 of Section 24, Township 26 North, Range 1 West, Kay County, Oklahoma.

The Appellant, Juan Caudillo, will be referred to as "Appellant"; Ashland Oil, Inc., as "Ashland"; the Applicant, Roy Fath, as "Appellee"; and the Corporation Commission as "Commission".

The matter came on for hearing upon the Application of Appellee, Roy Fath, mineral owner, before a Trial Examiner of the Commission who found that the Second Wilcox Sand, for which the one 10-acre drilling and spacing unit was sought, is one separate common source of supply. He further found that wells outside of the proposed 10-acre drilling and spacing unit are still producing oil from the Second Wilcox Sand.

The Trial Examiner filed his report recommending the Application be denied, because the Application does not cover "the common source of supply sought to be spaced," and there would be included within the 10-acre drilling and spacing unit lands which would not be underlain by the Second Wilcox Sand common source of supply.

The Trial Examiner's Findings concluded in part:

"14. However, should this cause be taken before the Commission en banc on exceptions, this Trial Examiner feels that said drilling and spacing unit should be denied anyway because the common source of supply sought to be spaced does not underlie all or substantially all of the unit sought to be formed. Approximately ¼ of the unit appears to be to the west of the fault running through the area, and, therefore, unproductive. Similarly, depending on whose testimony one chooses to accept, anywhere from ⅕ to slightly less than ½ of the east portion of the unit is to the east of the oil-water contact line and, therefore, unproductive. Practically all of the wells drilled in this area are relatively old and have been produced for some time on an unspaced, lease by lease basis, and, therefore, it appears inequitable to this Trial Examiner to create one single 10-acre drilling and spacing unit at this late date."

Exceptions were filed by Appellee and were argued to the Commission on December 3, 1974, at the conclusion of which the cause was taken under advisement. Thereafter, on December 9, 1974, the Commission in executive session, having considered all the evidence in this cause, concluded the exceptions filed by the Appellee should be granted and made the following findings:

"6. The mineral interests under the W/2 SE/4 NE/4 SE/4 are owned by Mr. Caudillo and the mineral interests underlying the E/2 SW/4 NE/4 SE/4 are owned by applicant. A consulting geologist for applicant testified the Second Wilcox Sand underlying the area has good permeability and porosity and there is an active water drive in the formation from the east to the west. However, he indicated because of a fault running through the area only the Second Wilcox Formation to the east of the fault would be productive. He established the approximate cost of drilling a well to the Second Wilcox Sand (3,924 feet) would be approximately $100,000.00 and was of the opinion from three to five acres of the Fath tract would contribute oil produced from the wellbore of the Caudillo Wood No. 4 Well.

"7. Based upon all the evidence in this cause, the Commission finds ten-acre drilling and spacing units are the proper sized units to efficiently and economically drain the recoverable oil thereunder, and that in the prevention of waste and protection of correlative rights, the application should be granted."

Thus, the Commission issued its Order No. 109432 granting Appellee's Application and establishing the 10-acre drilling and spacing unit sought. It is from this Order Appellant appeals to this Court.

A portion of Section 20 of Article IX of the Constitution of Oklahoma is as follows:

"The Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only, and in all

appeals involving an asserted violation of any right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts. In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence. Upon review, the Supreme Court shall enter judgment, either affirming or reversing the order of the Commission appealed from."

Thus, the controlling question in the present appeal from the Commission's Order No. 109432, granting Appellee Fath's Application and purporting to create the 10-acre drilling and spacing unit, is whether or not said Order can stand on the basis of the evidence and the law applicable to such cases.

Appellant contends that Order No. 109432, entered December 13, 1974, is beyond the power and jurisdiction of the Commission and, being aggrieved by said Order, the Appellant has appealed. By way of relief, Appellant asks this Court to vacate and set aside said Order.

In support of his contention, Appellant sets forth numerous points of law urged as error which are best summarized by the two points enumerated in his brief in chief: (1) That Order No. 109432 and the findings therein are in violation of 52 O.S. §§ 81–136 (1971) and particularly § 87.1; (2) that Order No. 109432 and the findings therein are not supported by substantial evidence and are arbitrary, unreasonable, and capricious.

In the instant case no answer brief was filed by Appellee nor was failure to brief by Appellee excused by this Court. On April 18, 1975, Appellee was by order required to show cause on or before May 1, 1975, why this appeal should not stand submitted on brief of Appellant only. The last application for extension of time to brief being denied August 5, 1975, the cause was ordered as standing submitted for adjudication.

In *Harvey v. Hall*, 471 P.2d 911 (Okl. 1970), this Court said in the syllabus:

"Where plaintiff in error has served and filed brief but the defendant in error has neither filed a brief nor offered any excuse for his failure to do so, the court is not required to search the record to find some theory upon which the judgment of the trial court may be sustained but may, where the authorities in the brief filed appear reasonably to sustain the assignments of error, reverse the cause with directions."

See also *Mulkey v. State*, 469 P.2d 1006 (Okl.1970), and *Needham v. Hays*, 431 P. 2d 441 (Okl.1967).

The drilling and spacing unit established by Order No. 109432 is the first drilling and spacing unit established for the Second Wilcox Sand and consists of the W/2 SE/4 NE/4 SE/4, a 5-acre tract owned by Appellee, and the E/2 SW/4 NE/4 SE/4, a 5-acre tract of which Appellant owns the full mineral interest. Both tracts are located in Section 24, Township 26 North, Range 1 West, Kay County, Oklahoma.

Ashland is the owner of the oil and gas leasehold estate covering the lands of Appellee and Appellant, but stated it was taking no interest in whether or not the spacing should be granted or denied.

While the Second Wilcox Sand common source of supply had not been previously spaced in this area, prior to filing of Appellee's Application Ashland was granted permission to drill the Caudillo Wood No. 4 Well on Appellant's land by Commission Order No. 10682. The Commission authorized the drilling of said well 165 feet west of the east line of Appellant's land (which is the west boundary of Appellee's tract). For some unexplained reason, the well was actually drilled 125 feet west of the east line of Appellant's tract. At the time of

the initial hearing before the Trial Examiner said well was perforated but not on production.

The single 10-acre drilling and spacing unit established by Order No. 109432 is contiguous to an area in which several other wells have been drilled to the Second Wilcox Sand, the same common source of supply as that covered by the single 10-acre drilling and spacing unit, some of which wells have been produced and are presently producing.

The record indicates that the Murray No. 1 Well in the SE/4 NE/4 of Section 24, the Lore No. 1 Well and Lore No. 2 Well in the SW/4 NW/4 of Section 19, the Fath No. 1 Well and the Fath No. 2 Well, the Caudillo No. 1 Well, and the Fath No. 1-A Well in the E/2 SE/4 of Section 24, had produced or are now producing from the Second Wilcox Sand.

52 O.S. § 87.1, commonly referred to as the "Well Spacing Act", provides in pertinent part:

"§ 87.1  Common source of supply of oil—Well spacing and drilling units

\*      \*      \*      \*      \*      \*

"(a) To prevent or to assist in preventing the various types of waste of oil or gas prohibited by statute, or any of said wastes, or to protect or assist in protecting the correlative rights of interested parties, *the Commission, upon a proper application* and notice given as hereinafter provided, and after a hearing as provided in said notice, *shall have the power to establish well spacing and drilling units* of specified and approximately uniform size and shape *covering any common source of supply,* or prospective common source of supply, of oil or gas within the State of Oklahoma;

\*      \*      \*      \*      \*      \*

"(b) In establishing a well spacing or drilling unit for a common source of supply thereunder, the acreage to be embraced within each unit and the shape thereof shall be determined by the Commission from the evidence introduced at the hearing, and the following facts, among other things, shall be material:

"(1) The lands embraced in the actual or prospective common source of supply; (2) the plan of well spacing then being employed or contemplated in said source of supply; (3) the depth at which production from said common source of supply has been or is expected to be found; (4) the nature and character of the producing or prospective producing formation or formations; (5) any other available geological or scientific data pertaining to said actual or prospective source of supply which may be probative value to said Commission in determining the proper spacing and well drilling unit therefor, with due and relative allowance for the correlative rights and obligations of the producers and royalty owners interested therein.

"The order establishing such spacing or drilling units shall set forth: (1) the outside boundaries of the surface area included in such order; (2) the size, form, and shape of the spacing or drilling units so established; (3) the drilling pattern for the area, which shall be uniform except as hereinbefore provided; and (4) the location of the permitted well on each such spacing or drilling unit. To such order shall be attached a plat upon which shall be indicated the foregoing information. Subject to other provisions of this act, the order establishing such spacing or drilling units shall direct that no more than one (1) well shall thereafter be produced from the common source of supply on any unit so established, and that the well permitted on that unit shall be drilled at the location thereon as prescribed by the Commission, \* \* \*." (Emphasis ours)

Section 86.1(c) of Title 52 defines the term "common source of supply" thusly:

"(c) The term 'Common Source of Supply' shall comprise and include that area which is underlaid or which, from geological or other scientific data, or

from drilling operations, or other evidence, appears to be underlaid, by a common accumulation of oil or gas or both; provided, that, if any such area is underlaid, or appears from geological or other scientific data, or from drilling operations, or other evidence, to be underlaid by more than one common accumulation of oil or gas or both, separated from each other by a strata of earth and not connected with each other, then such area, as to each said common accumulation of oil or gas or both, shall be deemed a separate common source of supply;"

According to Appellant, the foregoing definition shows the important element of a common source of supply is the area which appears to be underlain by a common accumulation of oil or gas or both. Appellant urges that in Order No. 109432 the area underlain by the Second Wilcox Sand is larger than the single drilling and spacing unit established by that Order and that the entire unit is not underlain wholly by the common source of supply.

In support of his position, Appellant cites *Cameron v. Corporation Commission,* 418 P.2d 932 (Okl.1966), in which this Court said in the syllabus:

"The inequitable and unfair taking, and the waste, sought to be prevented by that part of this State's Oil and Gas Conservation Statutes commonly referred to as 'the Well Spacing Act' (Tit. 52 O.S.1961, secs. 86.1–87.1, and Tit. 52 O.S.1963 Supp., sec. 87.1) refers to such evils in connection with a common source of supply, and *where it is not established by substantial evidence that an area sought to be spaced is underlaid by a common source of supply,* or 'prospective' common source of supply, and that waste will result if it is not spaced, *this State's Corporation Commission has no authority,* under said Act, *to create oil and/or gas well spacing units in the area."* (Emphasis ours)

In *Panhandle Eastern Pipe Line Co. v. Corporation Commission,* 285 P.2d 847 (Okl.1955), it was pointed out that the Commission has no authority to include a known non-productive area in a drilling and spacing unit. Nonetheless, this Court held, in that case, that there was sufficient evidentiary support for the Commission's determination to the effect that all portions of each of the sections included within the drilling and spacing unit order overlay the common source of natural gas supply. In *Panhandle,* supra, this Court said at page 850:

". . . the Commission has no power to include within the spaced area tracts that do not overlay the common source of supply, . . ."

Appellant contends all of the evidence is to the effect that from two and one-half (2½) to four (4) acres of the land of Appellee Fath is not underlain by the Second Wilcox Sand, the common source of supply.

This picture conforms to testimony given at the hearing before the Commission by Appellee's own expert witness, Mr. Roy Carmack, a consulting geologist. His testimony established a trending fault running northeast and southwest through Appellant's 5-acre tract and that only the Second Wilcox Sand to the east of the fault would be productive. There will be no production on the west side of the fault. On direct examination Carmack testified (Tr. p. 15):

"Q. How much of this five acres lies west of the fault, in your opinion?

"A. According to that, at least 50 per cent or over.

"Q. In other words, we're starting in with 50 per cent of Mr. Caudillo's land not productive and then we move 125 feet from the Fath lease line, is that true?

"A. Yes, sir."

Although Carmack, testifying as Appellee's witness, recommended the proposed 10-acre unit he stated that the correlative rights of the parties could also be established by plugging the Caudillo No. 4 Well located on Appellant's tract. He noted that if the Caudillo No. 4 Well is allowed to produce, then the Fath oil will move into the Caudillo unit and the Faths will not be protected; the Appellant would receive more than his correlative share of the reservoir. He further stated that in his opinion the Fath tract would contribute at least ½ of the oil produced from the wellbore of the Caudillo No. 4 Well and that the 10-acre spacing would benefit Appellant because of increased oil prices that would be obtained.

▬ Appellant urges, however, that a portion of Carmack's testimony supports Appellant's position that the single drilling and spacing unit sought to be established is not wholly underlain by the common source of supply and that said drilling and spacing unit does not embrace all of the area which is underlain by the common source of supply. We agree.

Carmack testified at page 36 of the Transcript:

"Q. I asked you, in your opinion, how many acres under the five acres of the Fath land that is proposed to be included in this 10-acre unit is not watered out?

\* \* \* \* \* \*

"A. (Witness continuing) Approximately three acres.

"Q. Three acres is still productive under the five acres?

"A. Yes, sir."

Thus, Appellee's own witness admitted that only approximately three acres of Appellee's tract is underlain by the Second Wilcox Sand which will be productive of oil.

▬ Further supporting Appellant's position in this cause is Ashland's witness, F. W. Loveless, a petroleum engineer, who in-

dicated he had made an engineering study of the Wilcox Formation in this area. He testified (Tr. p. 47):

"Q. Based upon your studies and your engineering data, will you testify as to what acreage, if any, on the Fath lease would contribute oil to Caudillo No. 4?

"A. Approximately one acre as shown on Exhibit 16."

This State's Oil and Gas Conservation Statutes require that the evidence show that the area for which drilling and spacing units are established must be underlain by the common source of supply. The Commission has no authority to include a known non-productive area in a 10-acre drilling and spacing unit. *Panhandle Eastern Pipe Line Co. v. Corporation Commission,* supra.

Though a portion of the evidence introduced on behalf of the Applicant-Appellee might be considered in conflict with the evidence introduced by Appellant, we find nothing in Applicant-Appellee's evidence to dispute the limited extent of productive Second Wilcox Sand in that the single 10-acre drilling and spacing unit proposed does not embrace all of the common source of supply in the Second Wilcox Sand and that the unit as such is not wholly underlain by said common source of supply.

From our analysis of the evidence as a whole, we agree with Appellant's contentions and conclude that the Commission's determination to establish the 10-acre drilling and spacing unit is without sufficient evidentiary support.

The allegations of error by Appellant are reasonably supported by the authorities and argument of the brief in chief and the cause is accordingly reversed with directions to vacate the order of the Oklahoma Corporation Commission, Order No. 109432.

Reversed and remanded with directions.

All Justices concur.