MANUFACTURERS NATIONAL BANK OF DETROIT v
DEPARTMENT OF NATURAL RESOURCES

Docket No. 77-4909. Submitted June 20, 1978, at Lansing.—Decided
August 8, 1978.

Manufacturers National Bank of Detroit, under a trust agree-
ment, and Adeline K. Werp, own royalty interests in a produc-
ing gas well. The lessee and operator of the well is Shell Oil
Company. Shell petitioned the Supervisor of Wells for an
expansion of the size of the drilling unit to include four
adjoining quarter-quarter sections of land upon which Shell
and Northern Michigan Exploration Company have oil and gas
leases. The supervisor found that each of the adjoining quarter-
quarter sections was partially underlain by the same pool
lying under the original drilling unit, would support a drilling
location under current well-spacing rules and that the existing
well would adequately and economically drain the entire unit.
To avoid wasteful drilling of unnecessary offset wells, the
supervisor, by special order, granted the proposed expansion.
Plaintiffs petitioned for review to Ingham Circuit Court, where
the supervisor's special order was affirmed, Ray C. Hotchkiss, J.
Plaintiffs appeal and allege that the Supervisor of Wells does
not have authority to expand a drilling unit to encompass
tracts of land not completely underlain by a pool and that such
expansion constitutes an unconstitutional taking of plaintiff's
royalty interests for the benefit of the owners of land not
underlain by the pool. *Held:*

1. The Supervisor of Wells has authority to expand a drilling
unit to encompass tracts of land not completely underlain by a
pool of gas or oil.

2. A landowner may recover for the wrongful appropriation
of his gas and oil by another.

3. Where there is a pooling of property for the purpose of

REFERENCES FOR POINTS IN HEADNOTES
[1] 38 Am Jur 2d, Gas and Oil §§ 159, 164.
[2, 3, 5–7] 38 Am Jur 2d, Gas and Oil § 164 *et seq.*
[4] 38 Am Jur 2d, Gas and Oil § 4.

allocation of production from a single well each owner is to receive his just and equitable share of the gas and oil.

4. An order by the Supervisor of Wells is inequitable which allocates oil and gas on that proportion that the landowner's acreage bears to the total acreage of a drilling unit rather than total acreage of the drilling unit underlain by an oil and gas pool.

5. The Supervisor of Wells may remove inequities in the allocation of gas and oil interests by making an appropriate adjustment where his order of expansion provides for exceptions and the landowner petitions for relief and pursues his administrative remedy.

Affirmed.

1. MINES AND MINERALS—OIL AND GAS—BASIC DRILLING UNIT—ADMINISTRATIVE RULES.

The basic drilling unit for oil and gas is a quarter-quarter section drawn along government surveyed quarter-quarter section lines (1963 AACS, R 299.1201[A]).

2. MINES AND MINERALS—OIL AND GAS—SUPERVISOR OF WELLS—DRILLING UNITS—AUTHORITY TO EXPAND.

The Supervisor of Wells has authority to expand a drilling unit to encompass tracts of land not completely underlain by a pool of gas or oil.

3. MINES AND MINERALS—OIL AND GAS—SUPERVISOR OF WELLS—ONE WELL—MAXIMUM AREA—WASTE—UNNECESSARY WELLS—STATUTES.

The Supervisor of Wells may fix the maximum area which can efficiently and economically be drained by one well in order to prevent waste and the drilling of unnecessary wells (MCL 319.13; MSA 13.139[13]).

4. MINES AND MINERALS—OIL AND GAS—LANDOWNER—WRONGFUL APPROPRIATION.

A landowner owns the oil and gas under his land and may recover for the wrongful appropriation of his oil and gas by another.

5. MINES AND MINERALS—OIL AND GAS—ONE WELL—POOLING OF PROPERTY—LANDOWNERS—JUST AND EQUITABLE SHARE—STATUTES.

The pooling of property for the purpose of allocation of production from a single well must be upon terms and conditions that are just and reasonable and will afford to the owner of each

tract the opportunity to recover and receive his just and equitable share of the oil and gas and gas energy in the pool (MCL 319.13; MSA 13.139[13]).

6. MINES AND MINERALS—OIL AND GAS—LANDOWNERS—ALLOCATION OF PRODUCTION—JUST AND EQUITABLE SHARE—STATUTES.

A landowner's just and equitable share of the oil and gas in a pool in the context of allocation of production between wells is an amount substantially in the proportion that the quantity of the recoverable oil and gas under such property bears to the total recoverable oil and gas in the pool so far as can practicably be determined and obtained without waste and without reducing the bottom hole pressure materially below the average for the pool. (MCL 319.13; MSA 13.139[13]).

7. MINES AND MINERALS—OIL AND GAS—SUPERVISOR OF WELLS—ALLOCATION OF PRODUCTION—SPECIAL ORDERS—EQUITY—ADMINISTRATIVE REMEDIES—APPROPRIATE ADJUSTMENT.

An order by the Supervisor of Wells which allocates oil and gas on the proportion that a landowner's acreage bears to the total acreage of a drilling unit rather than total acreage of the drilling unit underlain by an oil and gas pool is inequitable; where the order provides that exceptions may be granted, the landowner has an administrative remedy available to correct any inequity by a petition to the Supervisor of Wells to make an appropriate adjustment in the allocation formula.

*Lynch, Gallagher & Lynch,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jerome Maslowski* and *Curtis G. Beck,* Assistants Attorney General, for defendant Supervisor of Wells.

*Loomis, Ewert, Ederer, Parsley, Davis & Gotting,* for Shell Oil Company and Northern Michigan Exploration Company.

Before: R. B. BURNS, P. J., and D. F. WALSH and M. E. CLEMENTS,* JJ.

R. B. BURNS, P. J. Plaintiffs appeal from a circuit

---

* Circuit judge, sitting on the Court of Appeals by assignment.

court affirmance of a well-spacing and drilling unit determination made by the Supervisor of Wells pursuant to the oil and gas conservation act, MCL 319.1 *et seq.;* MSA 13.139(1) *et seq.,* and rules promulgated thereunder, 1963 AACS, R 299.1201 *et seq.* We also affirm.

Plaintiffs own royalty interests in a producing gas well, originally located on an 80-acre drilling unit. Shell Oil Company, the lessee and operator of the well, petitioned the supervisor for expansion of the size of the drilling unit to include four adjoining quarter-quarter sections of land, upon which Shell and Northern Michigan Exploration Company have oil and gas leases. The supervisor found that each of the adjoining quarter-quarter sections was partially underlain by the same pool lying under the original drilling unit; that each adjoining quarter-quarter section was sufficiently underlain by the pool to support a drilling location under current well-spacing rules; and that the existing gas well would adequately and economically drain the entire proposed unit. To avoid wasteful drilling of unnecessary offset wells, the supervisor determined that the drilling unit should be expanded to the proposed 240 acres. Because by rule the basic drilling unit is a quarter-quarter section drawn along government surveyed quarter-quarter section lines, 1963 AACS, R 299.1201(A), the supervisor included all of each adjoining quarter-quarter section within the unit, even though it is undisputed that a substantial portion of each of the adjoining quarter-quarter sections are not underlain by the pool. Under Special Order 1-73, issued by the supervisor and applicable to Salina-Niagaran Formation wells, plaintiffs' royalty interests are "communitized" with other royalty interests within the drilling

unit, and they will participate in the royalty from the well in the proportion to which their acreage bears to the total acreage of the unit.[1]

Plaintiffs contend that the supervisor does not have the authority to expand a drilling unit to encompass tracts of land not completely underlain by the pool, and that such expansion constitutes an unconstitutional taking of plaintiffs' royalty for the benefit of the owners of land not underlain by the pool. They would have us set aside the drilling unit determination, resulting in Shell and Northern Michigan Exploration Company having to drill their own wells on the adjoining quarter-quarter sections.

While plaintiffs may be correct in their premise that the effect of the drilling unit determination is to dilute their royalty interests, their arguments on appeal are misdirected. We find that the supervisor's action was authorized by statute, and that plaintiffs have available a remedy by which they may avoid any unconstitutional taking of their royalty.

MCL 319.13; MSA 13.139(13), provides in pertinent part:

"To prevent the drilling of unnecessary wells the supervisor, after conference with and recommendation by the board, may fix a drilling unit for each pool. A drilling unit, as contemplated herein, means the maximum area which may be efficiently and economically drained by 1 well * * * .

"The drilling of unnecessary wells is hereby declared waste * * * ."

---

[1] Special Order 1-73 provides in part:

"All royalty and working interests within a drilling unit shall be communitized and each royalty owner therein shall participate in the royalty from the well drilled thereon in the relation that the acreage of such owner bears to the total acreage of the unit".

Plaintiffs argue that the language "may fix a drilling unit for each pool" expressly limits the size of the drilling unit to the size of the pool. In support of their argument that the boundaries of the drilling unit must follow the boundaries of the underlying pool, plaintiffs cite Oklahoma decisions.[2]

Not only do we think that the quoted provision does not carry the implication plaintiffs read into it, but there are substantial indications that the Legislature did not intend that meaning. First, that portion of MCL 319.13; MSA 13.139(13), providing for exceptions to well-spacing patterns where "the supervisor finds that the unit is partly outside the pool", clearly contemplates that a portion of the drilling unit may not be underlain by the pool. Second, plaintiffs' construction of the statute would be unworkable, since, absent extensive drilling, the perimeter of a pool can only be estimated through the use of seismic data. Plaintiffs' construction could lead to wasteful drilling on the speculation that the drilling unit was fixed over a too small area, thus defeating the purpose of the statute. The supervisor's decision to fix drilling unit boundaries along quarter-quarter section lines around the estimated boundaries of pools is a reasonable method of achieving the goal of the statute.

A landowner owns the oil and gas under his land, and may recover for the wrongful appropriation of his oil and gas by another. See, *e.g.*, *Ross v Damm*, 278 Mich 388; 270 NW 722 (1936). Where the supervisor compels the pooling of property for

---

[2] *Caudillo v Corporation Comm*, 551 P2d 1110 (Okla, 1976), *Cameron v Corporation Comm*, 418 P2d 932 (Okla, 1966), *Panhandle Eastern Pipe Line Co v Corporation Comm*, 285 P2d 847 (Okla, 1955). As these cases interpret different statutory language they are not persuasive.

the purpose of allocation of production from a single well, the allocation must

"be upon terms and conditions that are just and reasonable, and will afford to the owner of each tract in the pooling plan the opportunity to recover or receive his just and equitable share of the oil and gas and gas energy in the pool * * * ." MCL 319.13; MSA 13.139(13).

In the context of allocation of production between wells in a pool, a landowner's "just and equitable share" has been defined as

"an amount, so far as can be practicably determined and obtained without waste, and without reducing the bottom hole pressure materially below the average for the pool, substantially in the proportion that the quantity of the recoverable oil or gas under such property bears to the total recoverable oil or gas in the pool * * * ." MCL 319.13; MSA 13.139(13).

It is apparent that plaintiffs are entitled to recover, so far as can be practicably determined, an allocation of gas in the proportion that the gas under their land bears to the gas under the drilling unit. In the absence of data on the thickness of the pool, this would seem to be the proportion to which their acreage, which is totally underlain by the pool, bears to the total drilling unit acreage underlain by the pool. Special Order 1-73, which allocates on the proportion to which plaintiffs' acreage bears to the total acreage of the drilling unit, rather than total acreage of the drilling unit underlain by the pool, would seem to understate plaintiffs' just and equitable share.

The determination of how much acreage to include within the drilling unit affected the size of plaintiffs' royalty under Special Order 1-73. Plain-

tiffs have assumed that they are bound by the allocation formula of Special Order 1-73, and have therefore attacked the unit determination in order to secure their just and equitable share of production. We have found that the unit determination is authorized by statute. However, Special Order 1-73 specifically provides that exceptions may be granted thereto.[3] Since plaintiffs have available an administrative remedy for any inequity created by the unit determination, it cannot be said that the unit determination deprives them of property. We will not assume that the supervisor will fail to make an appropriate adjustment in the allocation formula if plaintiffs petition for relief.[4]

Affirmed. Costs to defendant.

---

[3] Special Order 1-73 provides in part:

"Exceptions to this order may be granted by the Supervisor of Wells in accordance with the provisions of the statutes specified herein."

[4] While we observe that plaintiffs' royalty allocation under Special Order 1-73 does not *appear* to be just and equitable, that precise issue is not directly before us, and we express no opinion as to the correct resolution thereof; that is a decision entrusted to the supervisor, not this Court. MCL 319.13; MSA 13.139(13). Nor do we express an opinion as to the applicability of plaintiffs' royalty contract with Shell upon that determination, the contract issue not being properly before us.