MANUFACTURERS NATIONAL BANK OF DETROIT v
DEPARTMENT OF NATURAL RESOURCES (ON REHEARING)

Docket No. 77-4909. Submitted June 20, 1978, at Lansing.—Decided
August 8, 1978.—Submitted on rehearing, after remand Febru-
ary 12, 1982.—Decided April 21, 1982. Leave to appeal applied
for.

Manufacturers National Bank of Detroit, under a trust agree-
ment, and Adeline K. Werp, owners of royalty interests in a
producing gas well, appealed from the order of the Ingham
Circuit Court, Ray C. Hotchkiss, J., which affirmed an order of
the Supervisor of Wells expanding the size of the drilling unit
in which plaintiffs' land was located to include four adjoining
quarter sections of land upon which Shell Oil Company and
Northern Michigan Exploration Company held oil and gas
leases. Shell Oil Company was also the lessee and operator of
the well located on plaintiffs' land. The Court of Appeals
affirmed the determination by the Supervisor of Wells that
such other quarter sections of land should be included in a
drilling unit with plaintiffs' land, since such additional quarter
sections were partially underlain by the same pool lying under
the original drilling unit. The Court, however, indicated that
the allocation of production provision of the order of the
Supervisor of Wells might not be fair and equitable within the
meaning of the statutory provision, but did not decide that
issue because the precise question was not raised and the
plaintiffs had an administrative remedy before the Supervisor
of Wells. See 85 Mich App 173 (1978). Plaintiffs moved for a
rehearing and, upon notification by counsel for the Supervisor
of Wells that the Supervisor of Wells would not make any
adjustment in the allocation formula, the Court of Appeals
granted a motion for rehearing and remanded the matter to
the Supervisor of Wells with instructions to apply the alloca-
tion formula expressed in the original opinion of the Court
subject to the defense that the parties, by contract, had agreed
to a particular allocation formula. The Court of Appeals re-
tained jurisdiction (Docket No. 77-4909, amended order of Octo-

REFERENCE FOR POINTS IN HEADNOTE
38 Am Jur 2d, Gas and Oil § 164.

ber 2, 1978 [unpublished]). On remand the Supervisor of Wells denied the petition for reallocation of production on the basis of the allocation provision in the lease between plaintiffs and Shell Oil Company. The Court of Appeals undertook review of the final order of the Supervisor of Wells pursuant to the retention of jurisdiction in the order granting rehearing and remanding with instructions. *Held:*

The reliance by the Supervisor of Wells on the allocation formula contained in the lease between plaintiffs and Shell Oil Company is misplaced, since that provision provides a formula for allocation of production where Shell creates a pooled drilling unit pursuant to the provisions of the lease. The drilling unit created in the instant case was created by the Supervisor of Wells pursuant to statute. Accordingly, allocation of production royalties should be in accordance with the allocation formula set forth by the Court in its original opinion, that being: the allocation of production should be in proportion to the ratio the acreage underlain by the pool in each parcel has to the total drilling unit acreage underlain by the pool rather than the ratio the total acreage of each parcel has to the total acreage of the drilling unit.

Remanded.

MINES AND MINERALS — OIL AND GAS — ALLOCATION OF PRODUCTION — SUPERVISOR OF WELLS.

A provision in an oil and gas lease which provides a formula for the allocation of production royalties from a well where the lessee has created, pursuant to the lease's provisions, a pooled drilling unit does not govern the allocation of production royalties where the pooling and creation of the drilling unit is done by the Supervisor of Wells pursuant to statute; where the Supervisor of Wells pools and creates a drilling unit, the Supervisor of Wells, in the absence of data of the thickness of the pool, shall allocate the royalties for the production of a well to each parcel of the drilling unit on the basis of the ratio that the acreage underlain by the pool in each parcel has to the total drilling unit acreage underlain by the pool (MCL 319.13; MSA 13.139[13]).

*Lynch, Gallagher, Lynch, Shirley, Martineau & Campbell,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Terrence P. Grady,*

Assistant Attorney General, for defendant Supervisor of Wells.

*Loomis, Evert, Ederer, Parsley, David & Gotting* (by *George W. Loomis, Harvey J. Messing* and *Michael G. Oliva),* for defendants Shell Oil Company and Northern Michigan Exploration Company.

### On Rehearing

Before: R. B. Burns, P.J., and D. F. Walsh and D. C. Riley, JJ.

R. B. Burns, P.J. This case comes to us on rehearing. It originally was reported in 85 Mich App 173; 270 NW2d 550 (1978).

The Court stated:

"A landowner owns the oil and gas under his land, and may recover from the wrongful appropriation of his oil and gas by another. See, *e.g., Ross v Damm,* 278 Mich 388; 270 NW 722 (1936). Where the Supervisor compels the pooling of property for the purpose of allocation of production from a single well, the allocation must

"'be upon terms and conditions that are just and reasonable, and will afford to the owner of each tract in the pooling plan the opportunity to recover and receive his just and equitable share of the oil or gas and gas energy in the pool * * *.' MCL 319.13; MSA 13.139(13).

"In the context of allocation of production between wells in a pool, a landowner's 'just and equitable share' has been defined as

"'an amount, so far as can be practicably determined and obtained without waste, and without reducing the bottom hole pressure materially below the average for the pool, substantially in the proportion that the quantity of the recoverable oil or gas under such property bears to the total recoverable oil or gas in the pool * * *.' MCL 319.13; MSA 13.139(13).

"It is apparent that plaintiffs are entitled to recover, so far as can be practically determined, an allocation of gas in the proportion that the gas under their land bears to the gas under the drilling unit. In the absence of data on the thickness of the pool, this would seem to be the proportion to which their acreage, which is totally underlain by the pool, bears to the total drilling unit acreage underlain by the pool. Special Order I-73, which allocates on the proportion to which plaintiffs' acreage bears to the total acreage of the drilling unit, rather than total acreage of the drilling unit underlain by the pool, would seem to understate plaintiffs' just and equitable share.

"The determination of how much acreage to include within the dwelling unit affected the size of plaintiffs' royalty under Special Order I-73. Plaintiffs have assumed that they are bound by the allocation formula of Special Order I-73, and have therefore attacked the unit determination in order to secure their just and equitable share of production. We have found that they unit determination is authorized by statute. However, Special Order I-73 specifically provides that exceptions may be granted thereto.[3] Since plaintiffs have available an administrative remedy for any inequity created by the unit determination, it cannot be said that the unit determination deprives them of property. We will not assume that the Supervisor will fail to make an appropriate adjustment in the allocation formula if plaintiffs petition for relief."[4]

"[3] Special Order I-73 provides in part:

" 'Exceptions to this order may be granted by the Supervisor of Wells in accordance with the provisions of the statutes specified herein.' "

"[4] While we observe that plaintiffs' royalty allocation under Special Order I-73 does not *appear* to be just and equitable, that precise issue is not directly before us, and we express no opinion as to the correct resolution thereof; that is a decision entrusted to the supervisor, not this Court. MCL 319.13; MSA 13.139(13). Nor do we express an opinion as to the applicability of plaintiffs' royalty contract with Shell upon that determination, the contract issue not being properly before us." (Emphasis in original.)

*Id.,* 178-180.

Plaintiffs filed an application for rehearing. An

order granting the rehearing was entered which stated:

"In this cause an application for rehearing having been filed by plaintiffs-appellants, and an answer in opposition thereto having been filed, and this Court having denied the application for rehearing by an order of this Court dated September 12, 1978,

"And since the entry of the abovementioned order an answer having been filed by the Attorney General on behalf of the Supervisor of Wells, wherein he indicates that the Supervisor of Wells will not make any adjustment in the allocation formula, and states:

" 'The defendant-appellee wishes to advise the Court that he is of the opinion that the interested parties have heretofore declared and determined as between themselves the appropriate method by which to allocate production.'

"This Court having stated in footnote 4 of its opinion:

" 'Nor do we express an opinion as to the applicability of plaintiffs' royalty contract with Shell upon that determination, the *contract issue not being properly before us.'* (Emphasis added.)

"And this Court having determined that the original order of the Supervisor of Wells was not based upon a contract and the contract issue is not before us;

"Therefore, it is ordered that the plaintiffs-appellants' application for rehearing be and the same is hereby granted.

"It is further ordered that the case be remanded to the Supervisor of Wells and that he reallocate the production, using the formula expressed in the original opinion of this Court;

"It is further ordered that if a valid contract exists between the parties agreeing to a particular allocation formula, such contract may be introduced into evidence as a possible defense to any change in the allocation formula.

"It is further ordered that the findings of the Supervisor of Wells shall be forwarded to this Court within 30 days of such findings.

"This Court retains jurisdiction."

The Supervisor of Wells held:

"The petition to reallocate production is denied on the basis that allocation of production between the parties has been agreed upon in the lease contract."

That part of the lease upon which the supervisor relies states:

"16. Lessee is hereby given the right, at its option, at any time and from time to time during the continuance hereof, and whether before or after production, to unitize and pool for development and operation purposes all or any part or parts of leased premises, or rights therein, with any other land in the vicinity thereof, or with any leasehold, operating, or other rights or interests in such other land, so as to create units of such size and surface acreage as lessee may desire, but containing not more than 88 acres; provided, however, a unit may be established hereunder containing not more than 640 acres, plus 10% acreage tolerance, if unitized only as to gas rights or only as to gas and condensate. Each unit shall be created by lessee's recording an instrument identifying the unit so created. Any well drilled or operations conducted on any part of any lands so pooled shall be considered a well drilled or operations conducted on leased premises under this lease, and there shall be allocated to the portion of leased premises included in any such unit such proportion of the actual production from all lands in such unit as such portion of leased premises, computed on an acreage basis, bears to the entire acreage of such unit. The production so allocated shall be considered for the purpose of payment or delivery of royalty to be the entire production from the portion of leased premises included in such unit in the same manner as though produced from such portion of leased premises under the terms of this lease."

The fallacy with the supervisor's holding is that the pooling and creation of drilling units was not done by Shell. The pooling and creation of drilling units was done by the Supervisor of Wells under MCL 319.13; MSA 13.139(13), which provides:

"To prevent the drilling of unnecessary wells the supervisor, after conference with and recommendation by the board, may fix a drilling unit for each pool. A drilling unit, as contemplated herein, means the maximum area which may be efficiently and economically drained by 1 well * * *.

"The drilling of unnecessary wells is hereby declared waste * * *."

This case is remanded to the Supervisor of Wells to adjust the allocation of royalties using the formula set forth in our original opinion.